UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARRY JENKINS,

    *Plaintiff*,

v.

BAY CITY, CITY OF,
MICHAEL J. CECCHINI,
ROBERT LISTER,
KASEY DOBBYN,
DANA MUSCOTT,
NICHOLAS PLETZKE,
DONALD LAPOUTTRE;
and DANIEL CALLAN,

    *Defendants*.
_____/

CASE NO. 1:18-cv-11976
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

### REPORT AND RECOMMENDATION TO SUA SPONTE DISMISS PLAINTIFF'S COMPLAINT
(Doc. 1)

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Complaint (Doc. 1) be **DISMISSED** *sua sponte* for failure to state a claim under 42 U.S.C. § 1983.

**II.  REPORT**

    **A.  Introduction and Background**

On June 22, 2018, Plaintiff Barry Jenkins filed the instant lawsuit asserting claims under 42 U.S.C. § 1983 against Defendants City of Bay City ("the City"), Michael J.

Cecchini, Robert Lister, Kasey Dobbyn, Dana Muscott, Nicholas Pletzke, Donald LaPouttre, and Daniel Callan. (Doc. 1). He specifies that Defendants Cecchini, Dobbyn, and Pletzke are police officers, (*Id.* at PageID.1, 11), that Defendant Muscott is the City Manager for Bay City, (*Id.* at PageID.13), and that Defendants LaPouttre and Callan are civilians, (*Id.*).

The facts in the Complaint involve a string of criminal proceedings allegedly initiated by the City, reaching back to 1997 when Plaintiff was "maliciously" prosecuted by the City for assault with the intent to do great bodily harm less than murder; "the charges were dismissed." (*Id.* at PageID.6). He was incarcerated for "an unrelated case" thereafter and released on parole in 1998, only to catch "a PV for Assaultive behavior, and receive a 12 month flop" that would continue his incarceration until 2002. (*Id.*). In 2004, the City "used misrepresentation to bring the charge of Malicious Destruction of Private Property," which was dismissed. (*Id.*). The same year, however, the City "used misrepresentation to convict Plaintiff for Domestic Violence for slapping a phone out of Sara LaPouttre's hand," which resulted in a brief period of incarceration in jail. (*Id.*). In 2007, the City again charged Plaintiff with "Delivery of a controlled substance under 50 grams" but the charges were dismissed. (*Id.*). In 2009, the City brought "the charge of Larceny from a Motor Vehicle; and because of fraud, the case was dismissed." (*Id.* at PageID.7). In 2010, Plaintiff received a fine for disorderly conduct. (*Id.*). In Plaintiff's view, "the police officers under [the City's] command did intentionally and willfully conduct a continuous campaign of racial animosity profiling against Plaintiff . . . ." (*Id.*).

Defendant LaPouttre—Sara LaPouttre's father—stoked this pattern of police discrimination by feeding officers false information and, in 2011, conspiring with Defendant Dobbyn "to deny Plaintiff equal protection of the law when using fraud against him . . . and inflicting acute mental stress, pain, and suffering." (*Id.* at PageID.9).

In May 2012, Plaintiff was convicted of domestic violence and confined until January 2013. During his incarceration, Defendant Callan "maliciously broke Plaintiff's jaw" out of racial animosity, and Defendants Cecchini and "Thomas Pletzke" denied Plaintiff "immediate medical treatment in retaliation of his free speech with the judge concerning the fraud allegations that turned out frivolous." (*Id.* at PageID.9-10) (capitalization corrected). "[F]or erroneous reasons," Defendants refused to investigate or "prosecute" this incident. (*Id.* at PageID.12).

On or about "2011-16," Plaintiff opened a barber shop, but Defendant Pletzke contacted the renter Dick Charbonneau and "demand[ed] that [he] evict Plaintiff" and shut his business down "in furtherance of the object of the fraud conspiracy," though he does not say whether Mr. Charbonneau complied with this demand. (*Id.* at PageID.7). Defendant Pletzke also "pulled up and yelled" to Plaintiff—who was standing outside the barber shop—that "'if you guys are going to be congregating I'm going to start writing you guys tickets.'" (*Id.*). "Bay City Police waited until Plaintiff got off work, and followed him pulling him over and issuing citations, as a pattern of harassment campaign on account of his black American race and membership in a protected class." (*Id.*). Again, in 2016, the "Bay City Health Inspector came into" Plaintiff's newly-opened company "Boss Barbeque" and told him "that the Bay City Police paid him a visit" and encouraged him to

"shut Plaintiff down." (*Id.* at PageID.8). "The Police" then approached Plaintiff's landlord "Robbin Sooe" and "repeatedly intimidated [him] to evict Plaintiff" and "close his business down," but Mr. Sooe "refused." (*Id.*).

In July or August 2017, Plaintiff "had been shot at," and after police officers took a report, an individual named Rick Alvarez "rammed his vehicle into Plaintiff's vehicle," but Defendants failed to investigate the incident or prosecute Mr. Alvarez for his conduct. (*Id.* at PageID.10). In February 2018, Plaintiff initiated *pro se* legal proceedings seeking child custody, but "was retaliated against" in April when the court "had [P]laintiff incarcerated in jail [for contempt of court]" even though "there was no violation of any court order . . . ." (*Id.*).

### B. Standard of Review

Plaintiff proceeds in this action *pro se* and *in forma pauperis*. This Court must construe pleadings from a *pro se* litigant liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' . . ." (internal quotations omitted)). In light of his pauper status, however, I must screen the Complaint before directing service to Defendants in order to determine whether it may proceed. *See generally* 28 U.S.C. § 1915(e)(2). Dismissal is required if his pleadings are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant immune therefrom. *See id.*

When screening a complaint, the appropriate standard mirrors that articulated in Federal Rule of Civil Procedure 12(b)(6), which scrutinizes the legal sufficiency of

pleadings with regard to whether they state a claim upon which relief may be granted. It demands that the court "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which she complains was committed by a person acting under color of state law and (2) the conduct deprived her of a federal constitutional or statutory right. In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the

conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

### C. Analysis

Plaintiff's claims fail against different defendants for different reasons: (1) Against Lister and Muscott, he fails to aver any personal involvement in sanctionable conduct, and § 1983 does not provide for supervisory liability. (2) Against the City, he fails to allege that the City maintains a pattern or practice spurred by or resulting in constitutional violations, as required to demonstrate liability under § 1983. (3) Against Dobbyn and Cecchini, his claims are time-barred. (4) Against LaPouttre and Callan, who are private civilians, § 1983 provides no legal recourse. And (5) against Pletzke, Plaintiff fails to set forth specific, actionable allegations that he suffered any harm from Pletzke's conduct, and therefore he lacks standing to bring those claims. I discuss each of these determinations in turn.

#### 1. Lister and Muscott

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Plaintiff's Complaint does not identify any specific actions taken by either Lister or Muscott. As such, all claims against them must be dismissed.

#### 2. The City

Imposing § 1983 liability upon governmental entities requires showing "execution of a . . . policy or custom which results in an unconstitutional tort." *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694

(1978)). Yet Plaintiff's allegations fail to hint at such a policy or custom. Accordingly, his claims against the City should be dismissed.

Even generously construing certain allegations against the City as alluding to a policy or custom of wrongly prosecuting African-American individuals, *see* (Doc. 1 at PageID.5-7, 9-10), the conclusory nature of his allegations remains apparent. Taken together, Plaintiff's allegations regarding the City seem an attempt to state a claim for malicious prosecution. The Sixth Circuit, while recognizing that "malicious prosecution . . . is cognizable under § 1983 as a Fourth Amendment violation," has yet to outline "all of the elements of this constitutional tort." *Peet v. City of Detroit*, 502 F.3d 557, 579 (6th Cir. 2007). Nevertheless, it notes that prevailing on such a claim requires showing that the defendants lacked probable cause to prosecute. *Id.* at 579-80 (discussing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). Plaintiff's allegations as to the City's deception and lack of probable cause typify conclusory pleadings. *See, e.g.*, (Doc. 1 at PageID.6) ("On or about 2007, Plaintiff was charged by [the City] with Delivery of a controlled substance under 50 grams, and due to misrepresentation the charges were dismissed."). Because Plaintiff insufficiently details the lack of probable cause behind these numerous proceedings, the Court should dismiss his claims against the City.[1]

---

[1] Yet another reason for dismissing many of these claims exists: the statute of limitations bars claims arising more than three years before the date Plaintiff filed his suit. *E.g.*, *Rapp v. Putman*, 644 F. App'x 621, 626 (6th Cir. 2016) (clarifying that a constitutional malicious-prosecution claim in Michigan is subject to Michigan's "three-year statute of limitations for personal-injury claims"). Therefore, Plaintiff's allegations as to the City's malicious prosecution of him in 2003, 2004, 2007, 2009, 2010, and 2012 are not only conclusory, but also time-barred.

The Complaint includes two additional allegations regarding conduct from the "Bay City Police," (Doc. 1 at PageID.7-8), which I construe as directed against the City rather than any particular individual defendant. He avers that the "Bay City Police waited until Plaintiff got off work" at his barber shop "and followed him pulling him over and issuing citations, as a pattern of a harassment campaign on account of his black American race and membership in a protected class." (*Id.* at PageID.7). In addition, Plaintiff contends that the Bay City Police tried to convince both the City's health inspector and Boss Barbeque's landlord "to shut Plaintiff down." (*Id.* at PageID.8). Much like the malicious-prosecution claims discussed above, however, the Complaint contains no plausible, non-conclusory suggestion that this conduct flowed from the City's policy or custom, and therefore the Court should dispense with them.

Plaintiff also includes a claim that "defendants" failed to investigate and prosecute Mr. Alvarez, a private civilian who allegedly "rammed his vehicle into Plaintiff's vehicle" causing significant damages. This claim must also fail. As the Sixth Circuit has held, "the state does not violate an individual's due process rights by failing to protect him or her from the criminal actions of a private actor, absent some special relationship between the individual and the state actor giving rise to a duty to protect." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994). According to the facts as Plaintiff has pleaded them, no special relationship existed between the City—or, for that matter, any other defendant in this case—and Plaintiff. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails

to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."); *cf. Cellini v. City of Sterling Heights*, 856 F. Supp. 1215, 1219-20 (E.D. Mich. 1994) (finding no special relationship between a city, its police department, or its police officers and a woman killed by an act of domestic violence after reporting her fears to the police). Likewise, the Constitution does not protect any interest in the criminal prosecution of another individual. *Accord, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.").

### 3. Dobbyn and Cecchini

A three-year statute of limitations applies to all civil-rights claims under § 1983 arising in Michigan. *Accord, e.g.*, *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016). Plaintiff's allegations against Dobbyn and Cecchini—dated in 2011, and 2012 through 2013, respectively—are therefore time-barred, as they expired in 2016 at the latest. For this reason, the Court should dismiss Plaintiff's claims against Dobbyn and Cecchini.

### 4. LaPouttre and Callan

Liability under § 1983 inures only when the defendant acted "under color" of a "statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, . . ." 42 U.S.C. § 1983. Private citizens acting in concert with governmental actors may, on occasion, also be held liable, though not acting under color of state law, but

this exception remains narrow. *See Redding v. St. Eward*, 241 F.3d 530, 533-34 (6th Cir. 2001) (noting that "the acts of a private citizen may be actionable under § 1983 if the private citizen acts in concert with" governmental actors). Aside from bald, conclusory allegations that LaPouttre acted in concert with Dobbyn, and Callan with Cecchini, the Complaint at issue contains no plausible allegations that the conduct of LaPouttre and Callan elevated their legal status from that of private individuals to that of governmental actors acting under color of state law. Absent such allegations, Plaintiff's claims against LaPouttre and Callan must fail. *Cf. Gazette v. City of Pontiac*, 41 F.3d 1061, 1064-65 (6th Cir. 1994) ("A municipality may not be held liable for the actions of persons not acting under color of state law, such as private citizens.").

### 5. Pletzke

Plaintiff's most specific allegations are lodged against Defendant Pletzke, but they remain inadequate. He alleges, for instance, that on "or about 2011-16,"[2] Pletzke demanded that his landlord evict Plaintiff and shut his business down "in furtherance of the object of the fraud conspiracy," but he does not allege that the landlord complied with this demand. (Doc. 1 at PageID.7). Similarly, Plaintiff alleges that Pletzke "pulled up and yelled out of his patrol car window" at Plaintiff "'if you guys are going to be congregating I'm going to start writing you guys tickets,'" but he does not allege that Pletzke was personally involved in issuing any undeserved citations or seizures thereafter. (*Id.*).

---

[2] Because I liberally construe Plaintiff's pleadings, I assume that the conduct he ascribes to Pletzke occurred within the limitations period for § 1983 actions arising in Michigan. *See, e.g.*, *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016) (discussing the three-year statute of limitations for § 1983 actions arising in Michigan).

Ultimately, Plaintiff's allegations against Pletzke fail to detail any constitutional violation. As to Pletzke's alleged attempt to have Plaintiff evicted—which I construe as sounding in either procedural due process or Fifth-Amendment takings jurisprudence—Plaintiff fails to point to any resulting deprivation, and further, fails to describe with particularity Pletzke's fraudulent motives, as required by Federal Rule of Civil Procedure 9. *Cf.*, *Richland Park Homeowners Ass'n, Inc. v. Pierce*, 671 F.2d 935, 944 n.7 (5th Cir. 1982) ("[T]here is no taking within the purview of the due process clause without some diminution of the owner's rights of use in his property, i.e., actual interference or encroachment of some degree."). In other words, Plaintiff claims that Pletzke *attempted* to subvert due process, but such an attempt is not, without more, a cognizable constitutional violation. This is especially true where, as here, the fraud and conspiracy allegations lack the requisite meat on their bones. Likewise, the allegation that Pletzke taunted Plaintiff from his patrol car—while certainly unprofessional and ill-mannered, if true—did not in fact constitute an encroachment on any constitutional interest.

For these reasons, the Court should dismiss Plaintiff's claims against Pletzke.[3]

---

[3] Plaintiff also discusses allegedly unconstitutional behavior occurring in 2012 and 2013 by an individual named "Thomas" Pletzke. (Doc. 1 at PageID. 10) (capitalization corrected). Thomas Pletzke is not listed as a Defendant in Plaintiff's Complaint, but considering the similarity of the last name "Pletzke," I read Plaintiff's reference to Thomas Pletzke as a typographical error intended to read as Nicholas Pletzke. In any event, this particular allegation occurred outside the applicable limitations period, and therefore is time barredt. *See, e.g.*, *Haines*, 814 F.3d at 430.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 10, 2018						S/ PATRICIA T. MORRIS
								Patricia T. Morris
								United States Magistrate Judge

## **CERTIFICATION**

     I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Barry Jenkins at 2105 7th Street, Bay City, MI 48708.

Date: July 10, 2018						By s/Kristen Castaneda
								Case Manager